Thank you, Your Honor. Alone among the monetary penalties for sexual exploitation of children, the special assessment in Section 3014 is unique. It requires non-indigency. Restitution under these cases is mandatory, and it requires the use of force. I graduated from high school a long time ago, so anyway. So restitution, as I said, is mandatory. Forfeiture is mandatory. The $100 special assessment per count is mandatory. Even fines, at least according to the guidelines, shall be imposed absent the defendant's sustaining the burden of indigency. So presumably — Scalia Who's got the burden here, Mr. Weinstein? Weinstein I'm sorry? Scalia Who's got the burden here? Weinstein Well, there is — it would seem to me that it's a statutory prerequisite for doing it, and therefore, before imposed, it has to be — there are — to my knowledge, there were two circuit cases cited by the government where the burden — the court said — they're unreported, but the court said that it was a defendant's burden. There was nothing in the Second Circuit or any other circuit, as far as I can tell. Now, there's little — presumably, by putting in the term non-indigency, which is different from what appears in any of the other penalties, there was some meaning that the drafters — or at least I can presume there was some meaning they intended. The courts — the drafters have given little guidance on what a district court should consider in — Kennedy It's a very generous question. What — what are we being asked? There's a $5,000 — Weinstein Specialist. Kennedy — you're now talking about, right? Weinstein Correct. Kennedy And then there is the — a fine which was not imposed. Weinstein Correct. Kennedy Together with this — a checking off of a box — excuse me — of a box that said that the fine was waived because of inability to pay. Weinstein Correct. Kennedy And you're — you're saying that that because of — well, are you saying that that would be inability to pay anything because it can be beneath the guidelines? I mean, they could have had a $5,000 fine in addition, correct? It could have been $5,000 if he could pay that. So — so yours — what you're saying is that there's a conflict between what he — the judge wrote here when he checked off the box, and there's a conflict between that and what he did when he imposed the $5,000, right? So far? Weinstein I don't know if I'd call it a conflict, because at least the courts have distinguished between fines, which can be substantially more than $5,000. Kennedy What did he do, and what should we do? Weinstein I'm sorry? Kennedy What did the court do that — wrong that we should fix, and how should we fix it? Weinstein That the court made no findings on non-indigency in using the — the terms of his statute. Now, there were a number of — of the $5,000 penalty, which is different from the fine. Weinstein Correct. Correct. Kennedy So you think it should be — we should return it to the district court to make a finding on that? Is that — Weinstein Yes. Absolutely. Kennedy So as far as you're concerned, the government may have a — well, I'm not sure what their position could be, given the government. But you're here about the $5,000. Weinstein Only the $5,000. Kennedy That's what I want to make sure. Weinstein Correct. There is no decision in the Second Circuit on whether you look at current ability to pay and future ability to pay. The other circuits that have passed on this have all said future ability. So for purposes of this argument, I'm not contesting future ability. Kennedy Why not? Weinstein Well, because — the court shall assess an amount of $5,000 on any non-indigent person or entity convicted of an offense under the relevant provision. The — that looks like present tense, present situation. Under — forgive me, under — I know all those other circuits have disagreed, but I just go back to simple grammar. It means non-indigent at the time of the imposition. That would be, to me, the most natural reading. I don't see why you're abandoning that. Kennedy Well — Roberts Do you want to change your mind? Kennedy Well, if I have one vote, I certainly am willing to. But I think that at least I feel uncomfortable arguing the other side, and I'll let the government do that. But the one thing I will say is that this is converted to a civil debt for 20 years. Roberts Yes. So how is a court possibly going to know whether someone who is currently indigent will suddenly, after 20 years of prison, when he'll be — how old when he gets out? Kennedy He'll be in mid-50s. Roberts He'll be in 50s. Last I heard, it was not so easy for convicted felons to get jobs, particularly people convicted of this kind of crime. Kennedy Yes. Roberts And we have nothing — no findings from the district court, do we, that says, oh, I know that when he gets out, he is going to be able to pay this fine? Nothing like that. Kennedy Well, right. And that is why my emphasis is on the lack of findings. Nobody raised this below. I'm seeking — Roberts But if we send it back for findings, we need to make clear to the district judge whether we're talking about present or future, is my point. Kennedy Yes. How are we reviewing this argument? Is this to back up? You said there was no argument about this below. Roberts This — it was never raised in the district court. Kennedy This is more on fine error review. Roberts And I don't know that it was ever considered. The probation department, in imposing this, simply says — I'm referring to page 534 in the PSR — that you must pay the United States a special assessment of $300, which shall be due immediately, and a JVTA assessment of $5,000. The district court, on page 39 of the sentencing, A39 of my appendix, sentencing minutes, simply says, now I'm going to impose a mandatory special assessment of $300 on you, together with a JVTA assessment of $5,000. So nobody gave any consideration to this. We know that the defendant didn't have present ability to pay. Not only was he assigned counsel, but he had a $12,000 restitution imposed on him. He had $2,000 in credit card debt. He had a wife who was bipolar and was working from home, and he had a son who was receiving Social Security benefits for Asperger's syndrome. So he — and he had no money in the bank. Now, in future earnings, I think, as Judge Rakoff said, somebody who is going to spend at least 17 years in jail, assuming he gets good time, and is going to be mid-50s when he gets out, his job prospects are pretty dim, especially he will be a registered sex offender for life. So that it would seem that at least there has to be fact findings at that point, then counsel can raise the issue of whether or not future earnings come into play. But it was, as I said, not briefed or argued below, so I don't think it's necessary for this Court to vacate that in remand, and then it could be fully litigated before the district court at an appropriate time. Thank you. Thank you, Mr. Weinstein. You've reserved two minutes for rebuttal. Mr. Rodriguez. Good morning, Your Honors, and may it please the Court. My name is Justin Rodriguez. I'm an assistant United States attorney for the Southern District of New York, and I represent the United States on this appeal, as I did before the district court. Judge Pauley did not commit any error, let alone plain error, when he imposed the additional special assessment in this case. I take it that the fine, the guidelines fine, 50,000 to 250,000, is not at issue now. That's correct, Your Honor. No fine was imposed by Judge Pauley. You cannot appeal that. I'm sorry? You cannot appeal that. Or you are not. The United States has not appealed. No, $5,000 is what it's at. We're talking about $5,000. That's correct. And what's critical is that this case is before the Court on plain error review. And in that posture, Mr. Rosario has not cited any precedent from this Court or the Supreme Court that clearly or obviously undermines the results in the district court. And that alone — That, of course, is because it's a matter of first impression in this circuit, yes? That's correct, Your Honor. So you're not saying that if a matter comes up that is a matter of first impression and the panel believes that the district court got it completely wrong, that because there was never a case before, it can't be plain error? Well, so plain error requires in this context that the error be clear, obvious. We're not subject to a reasonable dispute. Right. So if, for example, the only reasonable and natural reading of the statute is that it refers to the indigency at the time of the imposition of the fine, I know that's not your position, but assuming that were true, then since it was uncontested that he was indigent at the time, it would be plain error, would it not? If that's what the court found, that it was clear from just the statute and that no decision was necessary to come up with that only reasonable interpretation, I would agree with that. Now, of course, six courts of appeals have read the statute to the contrary, which suggests that there is, in fact, at least a reasonable dispute. I'm always reminded in that regard of the McNally case where 13 courts of appeals read the mail fraud statute one way and the Supreme Court said, this is even close, they got it all completely wrong. So, and they reversed all 13 circuits. Fair enough, Your Honor. But in this context, I would point the Court to two aspects of this statute. You suggest that we're not the Supreme Court, are you? No, Your Honor, I wouldn't suggest that at all. But what I would point the Court to in this. Don't brag. In this particular statute, I think not the text as well as the context indicate that the assessment that a district court should be making is not just indigency or non-indigency at the time of sentencing, but rather a defendant's future ability to pay a special assessment. I believe it was the Sixth Circuit in Shepard looked at a few dictionary definitions of indigency, and what they were — what really guided their decision, and I think it should guide this Court's decision as well, is that in looking at the definition of indigent, it includes someone who is destitute of the means of comfortable subsistence, someone who lacks the means of subsistence. That focus on a person's means is a forward-looking assessment. A court should say and should assess whether not only does the person right now have the money in hand to pay the special assessment, but do they have the means to pay that special assessment in the time allotted for under the statute. Now, the statute here — Sotomayor, let's assume that interpretation for a moment. How possibly could a judge even remotely begin to do that? Someone is currently indigent, and they're going to be in prison for a minimum of 17 years and possibly full 20. They've been convicted of a crime that carries considerable stigma. So what rational basis would a judge have for saying, Oh, he's going to be able to pay this in 35 years? So, Your Honor, there's several responses to that. First is this Court recognized in the United States v. Hernandez, it's entirely proper to expect defendants to pay, in that case fines, but in this case a special assessment, with the earnings that they earn while in prison. And here there's every expectation that Mr. Rosario can work while in prison. As the Court noted in Hernandez, on average, Federal inmates that work can earn up to $1,000 a year in prison. And that number was based on an administrative office of the U.S. Court's publication from 1992. So there's reason to believe that the current and future average yearly earnings of Federal inmates are actually even higher. The Court also in United States — this Court in United States v. Thompson recognized that a fine may be imposed on a defendant who is presently indigent if the record contains evidence of his capacity to pay the fine from prison earnings. So it's entirely possible that when I checked the BOP website this morning, Mr. Rosario is expected to be released in October of 2034, so in 15 years. He may very well be able to pay the entirety of that $5,000 special assessment while working in prison over the next 15 years. But there are other factors that a court can look to as well. So when Congress said that this shall assess the amount of $5,000 on any non-indigent person, that was meaningless language because since anyone convicted under this crime would spend at least 17 years in prison, and since they would average $1,000 a year, Congress was just wasting its time putting that language in because under your interpretation they could pay it off during their — for sure, during their years in prison. I don't think that's quite right for several reasons, Your Honor. First of all, the $5,000 special assessment may be imposed in cases where there's no mandatory minimum, when someone is sentenced to a term of probation, a term of time served. So it's certainly not the case that in every instance where this special assessment will be imposed, someone will be going to prison for any period of time. The second response to that is that there are a category of people who a district court can determine at the time of sentencing are indigent. And those people are, to use the language from Shepard, not just people who are living paycheck to paycheck or may be living paycheck to paycheck, but someone who there's no basis to believe that they will ever earn any paycheck at all and instead will have to rely on others for life's basic necessities. And how do we, reviewing this argument, figure that out? Well, so — I mean, there weren't any findings below about any of this, right? So, Your Honor, there — what there was below is a clear indication from Judge Pauly, and he says on page 33 of the sentencing transcript, that this Court has reviewed the pre-sentence report, and he also adopted the findings of fact. In the pre-sentence report, and this is paragraph 140, the probation department says that the Court shall assess an amount of $5,000 on any non-indigent person in a covered case. So I think this Court can take Judge — Did he consider the arguments that are being made before — I'm sorry. Did he consider the arguments that are being made before us right now? No, Your Honor. So other than — Can we ask him? No, Your Honor, because this case is on plain error review. There is no special incantation that was required of Judge Pauly, given the posture below, where Mr. Rosario did not object, even though he had notice of this in the PSR, and the facts support — the uncontested facts in the record support his finding. And I'll just go through a couple of those. First, Mr. Rosario has a wide range of vocational skills. That's not disputed. He's skilled, by his own admission, in basic plumbing, painting, flooring, tile work. He can use all of those skills, presumably in prison, but also when he's released, to make payments. And payments that we're talking about here, over a 35-year period for $5,000, comes out to about less than $12 per month. So that's — that's what we're — So you said to support his finding. And would you just direct me, please, to the findings? So I think findings is — what I really mean is his conclusion. His conclusion, yes. And again, there's no — as I mentioned, there's no requirement in the statute that the judge make any explicit findings or make any special incantation. It may be a requirement of appellate review that the judge make some findings that we can review, right? Well, on plain error review, this Court certainly has the ability to do that based on what the record supports. So not only the wide range of vocational skills, the long history of employment, and the fact that Mr. Rosario is in good health and able-bodied, all of those factors more than support, especially on plain error review, the result reached in the district court. Thank you, Your Honors. You know, one thing that might help save us all a lot of time, since we're spinning our wheels around something, is for the government, which I, on occasion, have had occasion to do — not in this district, of course, but to remind the Court that it might be helpful was the Court making findings on this issue. And that base would have been covered, and we wouldn't be here on this issue anyway, not to say that Mr. Weinstein wouldn't have found another issue. Fair enough, Your Honor. Just a thought, Mr. Rodriguez. Thank you. Mr. Weinstein. A few small points. One, the government argues he has special skills. The special skills that the government is referring to in the probation report is that his father taught him to paint, to help with plumbing, and other such things. He has never been employed in any occupation that required that. His employment at the time — he had been employed for 17 years as a doorman and a concierge in various houses. I suspect, as a registered sex offender, that would not be available to him in the future. He also, in terms of $1,000, that's a maximum. He has a $12,000 restitution in order of priority. That comes first, as it's prioritized in the sentencing law. And also, there's a portion of it that has to go to everyday care, soap, other things in commissary accounts that inmates make. They certainly can assess him a substantial portion of that, but it isn't as if it's all $12,000. Now, the Court has the standard of review of facts, and there are none here that would be clear and convincing. So there are no facts for this Court to review. The legal issue is de novo. It's presented to the Court because there is never any interpretation or finding by the district court. Implicit findings probably might be okay in some cases. For example, if the defendant had $100,000 in the bank, an IRA, or owned real property, it might be appropriate for the Court simply to adopt the financial findings in the PSR. But here, there's none of that. So do you want us to reverse or remand? I want to remand to the district court for findings, yes, and argument. Thank you. Thank you both. We'll reserve decisions.